**NOT FOR PUBLICATION**

```
            UNITED STATES DISTRICT COURT
               DISTRICT OF NEW JERSEY


TYRONE LLOYD CAMPBELL,         :
                               :    Civil Action No. 12-4726 (PGS)
           Petitioner,         :
                               :
        v.                     :    OPINION
                               :
BRIAN ELWOOD, et al.,          :
                               :
           Respondents.        :
```

**APPEARANCES:**

Petitioner pro se
Tyrone Lloyd Campbell
Monmouth County Correctional Institution
Freehold, NJ  07728

Counsel for Respondents
Kirsten Lee Daeubler
U.S. Department of Justice
Civil Division
450 5th Street, N.W.
Room 6031
Washington, DC  20001

**SHERIDAN**, District Judge

 Petitioner Tyrone Lloyd Campbell, an alien presently in the custody of the Department of Homeland Security ("DHS") and confined at Monmouth County Correctional Institution in Freehold, New Jersey, has submitted a petition for a writ of habeas corpus

pursuant to 28 U.S.C. § 2241.[1]  All Respondents other than Warden Brian Elwood will be dismissed.[2]

Petitioner challenges his pre-removal-order mandatory detention, purportedly pursuant to the Immigration and Nationality Act, 8 U.S.C. § 1226(c).  For the reasons set forth below, this Court holds that Petitioner is entitled to a bond hearing pursuant to 8 U.S.C. § 1226(a)(2).

## I.   BACKGROUND

Petitioner Tyrone Lloyd Campbell is a native and citizen of Jamaica who entered the United States without inspection on an unknown date.  Petitioner became a temporary resident of the United States on July 6, 1988, pursuant to 8 U.S.C. § 1255(a).  On March 13, 1991, Petitioner filed a Form I-698 Application to Adjust Status from Temporary Permanent Resident, but he failed to

---

[1] Section 2241 provides in relevant part:

(a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions.
(c) The writ of habeas corpus shall not extend to a prisoner unless-- ... (3) He is in custody in violation of the Constitution or laws or treaties of the United States ... .

[2] Petitioner names as Respondents, in addition to Warden Brian Elwood, various federal immigration officials, the Secretary of the U.S. Department of Homeland Security, and the Attorney General of the United States.  Such remote federal officials are not proper respondents; instead, the proper respondent is the warden of the facility where Petitioner is detained.  See, e.g., Rumsfeld v. Padilla, 542 U.S. 426, 434-436 (2004); Yi v. Maugans, 24 F.3d 500, 507 (3d Cir. 1994).

appear for his scheduled interview, and no action was taken on the For, I-698 Application at that time.

On April 29, 2011, Petitioner was convicted in the U.S. District Court for the Eastern District of New York, pursuant to a guilty plea, of money laundering in violation of 18 U.S.C. § 1956(a)(2).  The court sentenced him to 364 days' imprisonment to be followed by three years' supervised release.  Campbell was released from criminal custody on either April 29, 2011, or May 12, 2011.  He was not taken into custody, at that time, by immigration officials.

On July 1, 2011, U.S. Citizenship and Immigration Services denied Petitioner's Form I-698 Application.  On July 5, 2011, USCIS issued to Petitioner a Notice of Intent to Terminate his temporary resident status.  On September 6, 2011, USCIS issued to Petitioner a Notice of Termination of temporary residence, at which time Petitioner's immigration status reverted to his former unlawful status.

On March 26, 2012, Immigration and Customs Enforcement officials arrested Petitioner and took him into custody.  The same day, ICE determined that Petitioner was eligible for release on bond, and set bond at $5,000.  The next day, ICE determined that Petitioner was subject to mandatory detention under 8 U.S.C. § 1226(c) and that, therefore, he was not eligible for release on bond.

On March 28, 2012, ICE initiated removal proceedings against Petitioner by issuing a Notice to Appear which charged Petitioner as being removable as an inadmissible alien present without admission or parole (under 8 U.S.C. § 1182(a)(6)(A)(i)) and as an inadmissible alien who committed an offense relating to money laundering (under 8 U.S.C. § 1182(a)(2)(I)(i)).

Petitioner first appeared before an immigration judge on April 2, 2012.  The proceedings have been adjourned several times, most recently until September 18, 2012.

## II.   RELEVANT STATUTES

Title 8 U.S.C. § 1226(a) provides the Attorney General with the authority to arrest, detain, and release an alien during the pre-removal-order period when the decision as to whether the alien will be removed from the United States is pending.  The statute provides,

> (a) Arrest, detention, and release
>
> On a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States. Except as provided in subsection (c) of this section and pending such decision, the Attorney General—
>
>> (1) may continue to detain the arrested alien; and
>>
>> (2) may release the alien on-
>>
>>> (A) bond of at least $1,500 with security approved by, and containing conditions prescribed by, the Attorney General; or
>>>
>>> (B) conditional parole; but

>    (3) may not provide the alien with work
>    authorization (including an "employment
>    authorized" endorsement or other appropriate work
>    permit), unless the alien is lawfully admitted for
>    permanent residence or otherwise would (without
>    regard to removal proceedings) be provided such
>    authorization.
>
> (b) Revocation of bond or parole
>
>    The Attorney General at any time may revoke a bond or
>    parole authorized under subsection (a) of this section,
>    rearrest the alien under the original warrant, and
>    detain the alien.

Certain criminal aliens are subject to mandatory detention pending the outcome of removal proceeding pursuant to 8 U.S.C. § 1226(c)(1)(B), which provides in relevant part that

>    The Attorney General shall take into custody any alien
>    who –
>    (A) is inadmissible by reason of having committed any
>    offense covered in section 1182(a)(2) of this title,
>    (B) is deportable by reason of having committed any
>    offense covered in Section 1227(a)(2)(A)(ii), (A)(iii),
>    (B), (C), or (D) of this title, ...
>
>    <u>when the alien is released</u>, without regard to whether
>    the alien is released on parole, supervised release, or
>    probation, and without regard to whether the alien may
>    be arrested or imprisoned again for the same offense.
>    (emphasis added).

(emphasis added). Section 1226(c)(2) permits release of criminal aliens only under very limited circumstances not relevant here.

### III. DISCUSSION

A. <u>Jurisdiction</u>

Under 28 U.S.C. § 2241(c), habeas jurisdiction "shall not extend to a prisoner unless ... [h]e is in custody in violation of the Constitution or laws or treaties of the United States."

28 U.S.C. § 2241(c)(3).  A federal court has subject matter jurisdiction under § 2241(c)(3) if two requirements are satisfied: (1) the petitioner is "in custody," and (2) the custody is "in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2241(c)(3); Maleng v. Cook, 490 U.S. 488, 490, 109 S.Ct. 1923, 104 L.Ed.2d 540 (1989).

This Court has subject matter jurisdiction over this Petition under § 2241 because Petitioner was detained within its jurisdiction at the time he filed his petition.  See Spencer v. Kemna, 523 U.S. 1, 7, 118 S.Ct. 978, 140 L.Ed.2d 43 (1998).  Petitioner also asserts that his mandatory detention is not statutorily authorized by 8 U.S.C. § 1226(c), and that it violates his due process rights.  See Zadvydas v. Davis, 533 U.S. 678, 699, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001); Bonhometre v. Gonzales, 414 F.3d 442, 445-46 (3d Cir.2005).

B.   Statutory Authority for Petitioner's Detention

Petitioner argues that he should not be subject to mandatory detention under Section 1226(c)(1)(A), based upon his money-laundering conviction, because DHS did not immediately place him into custody when he was released from criminal incarceration for that offense in the spring of 2011.  That is, Petitioner argues that district courts have interpreted "when ... released" under Section 1226(c) to mean that immigration authorities are required to detain an alien immediately upon release from criminal

6

incarceration, which did not occur here.  Petitioner asserts that the statutory authority for his detention lies under § 1226(a), which permits release under more liberal circumstances.

Respondent argues that the language "when ... released" is ambiguous based on district court splits on this issue.[3]  Because of this ambiguity, the government argues, this Court should defer to the Board of Immigration Appeals' ("BIA") interpretation of this language as decided in Matter of Rojas.[4]  See Chevron

---

[3] Respondent also argues that Petitioner has failed to exhaust his administrative remedies by failing to request a "Joseph" hearing, to challenge his detention under § 1226(c) either because he is not an alien or was not convicted of a crime that falls under § 1226(c).  As there is no dispute among the parties regarding these facts, and in light of the decision of the BIA in Matter of Rojas, discussed more fully, above, it is clear that exhaustion of administrative remedies would be a futile exercise.

[4] The standards set forth in Chevron U.S.A. Inc. v. Natural Resources Defense Council, Inc., 674 U.S. 837 (1984), control a court's review of an agency's construction of its governing statutes.

> When a court reviews an agency's construction of the statute which it administers, it is confronted with two questions.  First, always, is the question whether Congress has directly spoken to the precise question at issue.  If the intent of Congress is clear, that is the end of the matter; for the courts, as well as the agency, must give effect to the unambiguously expressed intent of Congress.  If, however, the court determines Congress has not directly addressed the precise question at issue, the court does not simply impose its own construction on the statute, as would be necessary in the absence of an administrative interpretation.  Rather, if the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute.

7

U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984); Matter of Rojas, 23 I. & N. Dec. 117 (BIA 2001).  Specifically, in Matter of Rojas, the BIA held that the Bureau of Immigration and Customs Enforcement has mandatory detention authority over an alien that has been released from criminal custody for an enumerated offense, and the detention does not need to be immediate based on the objective and design of the statute as a whole.  Matter of Rojas, 23 I. & N. Dec. 117 at 122.  Respondent also relies on a recent Fourth Circuit decision in which that court held that the BIA's interpretation of "when ... released" is permissible and plausible and should be given deference.  Hosh v. Lucero, 680 F.3d 375, 378 (4th Cir.2012).  Accordingly, Respondent argues that Petitioner is subject to mandatory detention, based on enumerated offenses in Section 1226(c), even though he was released from incarceration approximately a year before being taken into custody by ICE.  Finally, Respondent argues that the government is entitled to detain Petitioner under § 1226(c), even it if is interpreted to require detention immediately upon release, because the statute does not indicate that the consequence for the government's non-compliance should be the deprivation of its power of mandatory detention under § 1226(c).

---

Chevron, 467 U.S. at 842-43 (footnotes omitted).

The proper statutory authority governing petitioner's detention depends on interpretation of "when ... released" under Section 1226(c).  District courts in this Circuit have held that the statutory language, "when ... released," is not ambiguous and the plain meaning of this language is that "when" means "immediately" after release from incarceration, and does not apply to aliens who have been released for years before being taken into immigration custody.  See Parfait v. Holder, No. 11-4877, 2011 WL 4829391 at *9 (D.N.J. Oct.11, 2011); see also Christie v. El-Wood, No. 11-7070, 2012 WL 266454 (D.N.J. Jan.30, 2012); Beckford v. Aviles, No. 10-2035, 2011 WL 3515933 (D.N.J. Aug.9, 2011); Sylvain v. Holder, No. 11-3006, 2011 WL 2580506 (D.N.J. June 28, 2011); but see Diaz v. Mutter, No. 11-4029, 2011 WL 3422856 (D.N.J. Aug.4, 2011) (finding the statutory language ambiguous and deferring to BIA's interpretation of the statute). To reach this conclusion, those courts rely on step one of the Chevron analysis, where "[i]f the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress."  Chevron, 467 U.S. at 842-43.  Thus, district courts have held that it was Congress' intent for "when ... released" to mean immediate, whereas "any time after" would be contrary to Congress' intent, as Congress could have expressly required custody "at any time after" or "regardless of when the alien is

9

released." See, e.g., Parfait, 2011 WL 4829391 at *5 (quoting Alwaday v. Beebe, 43 F.Supp.2d 1130, 1133 (D.Or.1999)).  Thus, the district courts in this Circuit have primarily declined to defer to the BIA's interpretation that "when" essentially means "any time after" and does not require immediacy.  Id.

Chevron's step one analysis can be applied to the present matter where Petitioner was taken into custody six years after his most recent release from incarceration for a predicate offense.  The Court finds that "when ... released" means "immediately" and not "any time after" release as determined by the BIA's interpretation.  Matter of Rojas, 23 I. & N. Dec. 117 at 127.

This Court is also not persuaded by the Fourth Circuit's decision in Hosh to defer to the BIA's interpretation of "when ... released" as it is not binding authority on this Court.  The court in Hosh acknowledged that

> numerous district courts previously considering § 1226(c) have reached different conclusions. Some district courts have agreed with the holding we reach herein, finding ambiguity in the statute and giving deference to the BIA's prior interpretation of § 1226(c) in Rojas. Other district courts, however, including several courts within the Fourth Circuit, have held that the plain meaning of § 1226(c) requires a decision in the detainee's favor.

Hosh, 680 F.3d at 379 (internal citations omitted).

Until the Third Circuit decides this issue, this Court will rely on the plain meaning of § 1226(c) as other district courts

within this district have ruled. See, e.g., Parfait v. Holder, No. 11-4877, 2011 WL 4829391 at *9 (D.N.J. Oct.11, 2011). Therefore, Petitioner is subject to detention under Section 1226(a) and is entitled to an individualized bond hearing under Section 1226(a)(2).

## IV. CONCLUSION

For the reasons set forth above, the Court grants a Writ of Habeas Corpus, and directs that Petitioner Tyrone Lloyd Campbell be provided with an individualized bond hearing before an immigration judge, within seven days, pursuant to 8 U.S.C. § 1226(a)(2). An appropriate Order follows.

*s/Peter G. Sheridan*
Peter G. Sheridan, U.S.D.J.

Dated: September 27, 2012